Okay, the next argued case is number 19, 1292 Spigen Korea Co., Ltd. v. iSpeaker Co., Ltd. v. iSpeaker Co., Ltd. May it please the Court? iSpeaker's evidence simply was not sufficient to support a finding of a grant of summary judgment on invalidity. Further, the District Court cannot grant summary judgment where, saying there's no dispute over the facts, where there is. The District Court ignores... Counsel, what's non-obvious about exchanging a hinged drawer for a sliding drawer? Well, Your Honor, sliding doors and hinged doors are known alternatives generally, but the 283 patent is not just a sliding door versus a hinged door. That's not the entirety of one claim even, much less the entire patent, and there are other structures that needed to be addressed and they were not. Well, of course, if you're moving from a hinge to a sliding door, you need grooves, and those are in the reference describing the sliding door. True, but there are other structures unrelated to the sliding door, such as the raised wall, that there was a dispute about that the District Court ignored. Another structure that is unrelated to the sliding door would be the aperture that surrounds the raised wall. That is an element that was not addressed by iSpeaker at all in its summary judgment briefs. Well, we're talking about obviousness here, not lack of novelty, and these are pretty obvious features. What's distinctive about the back wall and the aperture? Well, they're not found in the prior art at all, and iSpeaker never pointed to them in the prior art in its briefing. They actually made no mention of a surrounds limitation at all anywhere, and it was only at the appellate level where they brought in new arguments saying that surround means the same thing as snugly fitting, but it's clear that on its face by the plain meaning of the two terms that they're not the same. Further, iSpeaker also didn't address the aperture to form a storage compartment in Claim 16, which also doesn't appear at all in the prior art. They pointed to an aperture, but that's where their analysis ended. They didn't complete the analysis for the entire limitation where it forms the storage compartment. iSpeaker's only argument there was that Claim 16 is encompassed in Claims 1 and 2, but Claims 1 and 2 don't include an aperture that forms a storage compartment. In Claims 1 and 2, the storage compartment is formed by a raised wall, and a raised wall is not included in Claim 16. Here again, the district court ignored that the prior art just doesn't disclose the claim element. There are a couple of limitations in Claim 14 that were highly disputed. The first was a recess formed along the outer side of the raised wall, and the second was a protrusion formed along a boundary of the aperture. At this point, the district court had found that the stowaway disclosed the raised wall, so based on that finding, iSpeaker's interpretation was that, well, then the recess was formed on the top surface of the raised wall. This was supported by iSpeaker's own evidence, the declaration of Timothy Kwan, who is an employee of Insipia, which is the company that makes the stowaway. Mr. Kwan's declaration, which is at Appendix 1644 and 1646-47, in his declaration, he said that the recess was located on, quote, the surface of the silicon core. The photos that were included in his declaration, which presumably were provided to him, had arrows pointing to a recess and also to a protrusion, but any annotations that denoted the raised wall or aperture or boundary of the aperture were added later for the summary judgment briefs and for the appellate briefs, and they were not included in Mr. Kwan's declaration. The fact that Mr. Kwan didn't at any point in his declaration indicate that there was a raised wall on the stowaway or that locate the protrusion along a boundary of the raised wall is telling. The recess itself is too shallow to meet the ordinary understanding of a side of a wall. It's less than half a millimeter, and although there is a protrusion on the hard frame of the stowaway, the position is arbitrary. It's closer to the other end of the hard frame than it is to the aperture, and it doesn't even follow along the same shape as the boundary. Saying that the protrusion on the stowaway follows along the boundary of aperture removes all meaning from the word along, by not requiring that there be any relationship between the protrusion and the boundary of the aperture other than general proximity, but along is not the same as near. So there was a genuine dispute over these two limitations in Claim 14, but instead the district court used hindsight to say that even if the elements weren't there in the prior art, it would just be obvious to a posito to try to move it there, so it does fit the claim. In Claim 10, there is a depression for easy access to the items stored within the storage compartment, and the stowaway does not teach that depression. Claim 1, upon which Claim 10 depends, gives us a soft case which comprises a storage compartment. And then Claim 10 tells us that the soft case further comprises a depression. This denotes that these are two separate structures and cannot be the same structure the way that iSPEAKER has been claiming. The district court said that it was unclear about whether the stowaway meets the limitation of easy access at all. That's out of Appendix 67. And the court's confusion may be in part because never in its summary judgment briefs did iSPEAKER argue that the stowaway's depression actually does provide easy access. Instead, they just said that there was a depression, and therefore Claim 10's limitation was satisfied. The district court, in saying that it was unclear about it, should have looked to the specification for clarification of this vague term, which is what a posito would have done, but the district court did not do this. Instead, it relied on its layperson understanding and ignored the specification and drawings, which SPEAKER did point the district court to. And if the district court couldn't determine whether the prior art even teaches the required claim, it shouldn't have invalidated it. Counsel, this is a very close prior art here. There are all sorts of cell phone cases. I notice in your patent there were no pieces of prior art cited by the applicant. Everything was cited by the examiner, which seems very strange to me, and a very close prior art. The Lawson reference has two, four, six columns of prior art. This is a very close prior art. And these aren't very substantial differences that you're urging on us. First, the patentee decided to rely on the PTO's prior art search. The PTO has the resources to conduct a much more thorough search. Are you aware of the duty of disclosure? Yes. And it seemed that to the patentee it seemed that any prior art that it had found was encompassed by what the PTO had found. As far as Lawson and the other prior art, the only similarities are that they, well at least for the Stowaway and for Lawson, that they come in three pieces. They have a soft case, a hard structure of some sort on the outside, and some sort of sliding cover or storage. And it's a phone case and it has storage. And that's pretty much where the similarities end. All of the prior art phone cases were bulkier than the 283 patent's invention. And what made the invention of the 283 patent patentable was the fact that it was able to achieve having the storage compartment three pieces for a phone case and still somehow manage to have a structure that was slim, compact, and then also have a hidden compartment. And this was unexpected because when you think of putting a raised wall onto the surface of a structure, you would think that would add bulk to it. But instead of making it bulkier, the patentee was able to make the structure even slimmer than other prior art. And speaking of the raised wall, there was a genuine dispute over whether there was a raised wall or not. The interpretation that ICE speaker and the district court give about raised wall reads raised out of the claim, leaving only wall. By saying that a raised wall and the side of a depression are essentially the same thing, they take meaning out of the word raised. The patent includes words like recess, indentation, depression throughout for various structures, but only uses raised for the walls. The patentee could have easily used the word depression for the storage compartment if he had so intended, but he didn't. He intentionally used the word raised, raised walls for that element. And that should have meaning. The district court was really fixated on this being simple technology. And so it was so simple that all the combinations and modifications that needed to be made were also simple. But simple technology doesn't mean that this is simple engineering or simple invention. And it doesn't mean that you can ignore the claim limitations, which have structural meaning and which depart from the prior art. Posita was defined as somebody who has a bachelor of science degree in mechanical engineering and one to two years of experience in working in the industry. And while that's not an incredibly high level of education and experience, it's still significantly more than what a layperson has and what a layperson would understand. If this technology really was so simple, then that definition of a posita would not have been necessary. But the district court ignored all the distinctions about the terms in the prior art and read raised out of the claim. Leaving and just said that, well, these are just changes in in elevation that are obvious to try, but they're not just changes in elevation. They're completely different structures altogether. Thank you. Thank you. Thank you. Thank you. Thank you. Good morning. May please the court. There was a lot of discussion during during appellants argument about raised wall and depression. The answer to the question is very simple. Relative to the depression, there's a raised wall relative to the raised wall. There's a depression. Nothing in the claims require anything different. And all that the appellant has done over and over again is said, well, this is what we think the claims mean. There's something very important missing in appellants analysis here and before the district court. And that's claim construction. On appeal, there are three terms for which the appellant has asked for claim construction. Grooves, sliding means, and comprises grooves. Those are the only three issues. None of those touch upon any of the issues for your honors to deal with here today. Instead, these are the terms that the appellant has said make their their claims different, but without telling us why. What they mean. Giving us an analysis based on platinory meaning, the specification, the prosecution history. Anything at all. Those terms include frame, raised wall, snugly fitting with an outer side, opposite side, depression. It goes on and on. For none of those does plaintiff want to put pen to paper and say, here's what we think these claims mean. And there's an important reason for that absence from their briefing here. It hurts them on infringement on every one of those issues. Now, a key one is snugly fitting. It appears in claim two. A very similar requirement is in claim 16. Claim 18, I believe, surrounds. If you look at appendix at 431, there's an image from their infringement contentions about what they think snugly fitting means. And it's the same exact image that they provide for the other claim that refers to the aperture being around. This is also in Apelli's response below here at 24, and also in the appendix at 1263. And what you can see there is what they point to in the aperture is on top of or away from. Every single one of the supposed raised walls in the accused product. And this court has said over and over again, if you are going to take an incredibly broad view of your claims for infringement, that also must be stuck with you for purposes of validity. That's what the appellant has done here. And a great case on this from just last year was 01 Communique Lab versus Citrix 889 F3rd 735. And what the court said is, a defendant is permitted to argue that if the claim term must be broadly interpreted to read on an accused device, then this same broad construction will read on the prior art. What they've done in each instance is take very minor details and said, well, those are on our claims and that's why the prior art's not good enough. And in each example, what they've also done is for purposes of infringement, effectively read that requirement out of the claim in order to have any basis to proceed on infringement. Now, the district court here, based on the clear and validity of the claims, did not reach the issue of infringement. And that's fine for all purposes here today. But that does not mean that this court should ignore the positions that the plaintiff took below and the appellant is still doing here. It cannot be that somewhat near, which is what they have for infringement of snugly fitting, is good enough. And they did that in both Claim 14 and in Claim 2, is good enough. But when it comes to validity, nope, it's got to be touching and it's got to be touching the outside surface. That's not how litigation is supposed to go. It's a game. It's a game for the appellant to see how far they can go before they get caught in one side or the other of their analysis. And it should stop here. There's no reason to send it back for us to again discuss these minor modifications, which they harp on, when all of them are within the prior art as a whole. And it does not, I mean, going back to KSR, KSR is very clear. We look at the scope and content of the prior art. Below, each and every limitation was addressed. For the most part, if you go to the Statement of Undisputed Facts and their response, those issues were not, were admitted. For Claim 3, for Claim 4, for Claim 5, there was one issue about whether it was supporting. And again, based on claim construction. For Claim 8, admitted. For Claim 10, the only argument, and the only argument raised was whether the depression and raised wall were the same or different. And also whether easy access was provided. Well, this was addressed at oral argument. And what I said there, what I'll say here is, if you made the depression a little bit narrower, it would hold the card tighter, and that would provide for less easy access. It's a relative term. Yes, of course, you could always make access harder. The depression makes it easier as structure relative to what it would otherwise be. This is not rocket science. For Claim 13, there's no dispute. This is just about the materials used. For Claim 17, no dispute, just requires a pair of grooves. For Claim 19, it's basically the same as Claim 3. Indentation and compliments, admitted that it's in the prior art, and long recess and protrusions. Claim 22, directly in the prior art, admitted, undisputed in the statement of facts. If you go through the statement of facts, you will see that basically every limitation, other than the few mentioned here, were undisputed in the record. And the sole question was, under KSR, with those undisputed elements, and Appelli having gone through and identified in detail the differences, we talked about the ordinary skill, which is relatively low, and there's no dispute, and Judge Carter below found that the technology is very simple. What he said was, as a matter of law, which is what obviousness is based on, there's no issue here that requires jury intervention, requires a jury to decide what's a raised wall, what's a depression. There's no real dispute, and there's no claim construction under which a dispute would be raised. The last issue under KSR is secondary considerations. On appeal, there was a thick stack of information provided to the court, supposedly showing secondary considerations. One big problem with all of that evidence was it was submitted after all but claim 14 were already invalidated. They didn't tell you that, but that's an important fact. You cannot supplement the record after the decision is made and say, okay, here's our secondary considerations now that we've lost. None of that material goes to claim 14 at all. And finally, the heavy, bulky, not slim, you can read the claims all you want, front to back, back to front. None of that stuff is in the claims, and that's what we're supposed to be here discussing. That's what a patent, that's what the ownership interest is. That's what they assert. That's what we have to defend. When you read limitations in the claim from the specification, we all know that's improper. We all know that that's not how claim construction is done, even if they had done claim construction. Instead, we're just looking at high-level differences that they say are between the prior art and their preferred embodiment and their commercial product. And throughout the process below, that was their process. You haven't identified the prior art. Presumably, you're talking about Stowaway and Loss. Yes, Your Honor. There were others, too, mostly for the purpose of showing the interchangeability of a hinged door with a sliding door. Lots of prior art showed both. And, in fact, the appellant admitted that there was a reason at the time that someone would have had to use a sliding door instead of a hinged door. So, as opposed to in most KSR cases, that's the crux of the issue. Would someone have had reason? Here, that's not even where the fight is. Unless there are any other questions, I'm glad to take my seat. I think we're fine. Thank you, Mr. Eisenberg. Thank you very much. Ms. Kim, we'll have some rebuttal time briefly. Thank you. Your Honor, first to discuss claim construction. We did bring those three claim limitations for construction, but only in case this court decides to remand. And we thought it would be helpful if this court does remand to have an opinion on the construction of those claim terms. And the district court below didn't reach infringement yet, so we didn't feel the need to, at this point, to really go into the claim construction for those terms. So, you were leaving claim construction to us, and you were leaving finding prior art to the Patent Office? Well, no, I think that we have sufficiently argued claim construction for those terms. And I think that we had sufficiently outlined them in our summary judgment briefs as well. But we don't believe that the district court correctly construed them. In particular, with sliding means, the district court confined the claim construction to one embodiment by saying that the roofs and rails can only slide in a vertical fashion, when the specification clearly states that they can go horizontally as well, and the drawing in Figure 12B would also show that the roofs and rails would have to go and slide horizontally in order for the embodiment in Figure 12B to exist. And as far as the other structures, Ice Speaker says that these are just minor structures, but they're not minor structures. They are structures that, when taken together with the independent claims, provide to the invention the benefits that we've talked about, about being slim and compact and lightweight and having a hidden storage compartment. What Ice Speaker doesn't seem to really talk about is that the scope and content of the prior art was highly disputed. And so, therefore, summary judgment should not have been granted in this case. And Ice Speaker doesn't say, no, the prior art does disclose the limitations that we've said aren't in the prior art, such as the surrounds limitation and the aperture to form the storage compartment. Those simply don't exist in the prior art, and Ice Speaker didn't point to them at summary judgment and doesn't point to them here at appeal. The district court simply ignored that those prior art elements did not exist, or those claim limitations did not exist in the prior art. And the district court ignored that Ice Speaker didn't have any evidence to support its arguments that the prior art taught certain claim limitations, such as how the protuberance supposedly structurally supports and reinforces the indentation on the hard protective frame. That's a conclusory statement that Ice Speaker gave about the stowaway, but it had no evidence to support that conclusion. And Spigen has contested that the protuberance on the stowaway does not structurally support and reinforce the indentation. In fact, Spigen says they have no relationship whatsoever. But the district court invalidated the claim anyway, saying that it was Spigen's burden to prove that the structures didn't do what it said. But it was Ice Speaker's burden to prove that in the first place. It's not Spigen's burden to prove the inverse. Ice Speaker needed to show evidence that the prior art did actually satisfy the claim limitations, and it did not here. And the district court ignored that there were disputes over the raised wall, over structures related to the raised wall. And it's precisely for these reasons that this court should reverse invalidating. Thank you. Thank you both. The case is taken under submission.